# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GLORIA GARRETT**<br><br>and<br><br>**JANE VANDEWALLE**<br><br>        Plaintiffs,<br><br>v.<br><br>**BRANSON COMMERCE PARK COMMUNITY IMPROVEMENT DISTRICT**<br><br>and<br><br>**SOUTHWEST TRUST COMPANY, N.A.**<br><br>        Defendants. | **Case No.** \_13-cv-2551\_ JAR/JPO |

## COMPLAINT

Plaintiffs Gloria Garrett ("Garrett") and Jane Vandewalle ("Vandewalle") (hereinafter sometimes collectively referred to as "Plaintiffs") for their Complaint against Defendants Southwest Trust Company, N.A. ("Southwest") and Branson Commerce Park Community Improvement District (the "District") (hereafter Southwest and the District are collectively referred to as "Defendants"), state as follows:

## PARTIES

1. Gloria Garrett is an individual residing at 10910 W. 145th Terrace, Overland Park, Kansas, 66221.

2. Jane Vandewalle is an individual residing at 10906 W. 120th Terrace, Overland Park, Kansas, 66213.

1

3. Defendant Southwest Trust Company, N.A. is a national banking association duly organized and existing and authorized to accept and execute trusts under the laws of the United States, and having its principal corporate trust office located at 4600 Madison Avenue, Suite 800, Kansas City, Missouri, 64112.

4. Defendant Branson Commerce Park Community Improvement District is a community improvement district and political subdivision of the State of Missouri with an address of 7300 College Boulevard, Suite 306, Overland Park, Kansas, 66210.

## JURISDICTION AND VENUE

5. This Court possesses jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this matter arises out of Federal law under 15 U.S.C. § 1691(a) and 12 C.F.R. § 202.7.

6. Southwest is subject to the jurisdiction in this Court by transacting business in the State of Kansas, and because the transactions giving rise to claims in this action occurred in the State of Kansas. Moreover, Southwest has substantial, continuous and systematic contact with the District of Kansas.

7. The District is subject to the jurisdiction in this Court by transacting business in the State of Kansas, and because the transactions giving rise to claims in this action occurred in the State of Kansas. Moreover, the District maintains an office in Overland Park, Kansas and has substantial, continuous and systematic contact with the District of Kansas.

8. Venue is proper in this court because a substantial part of the transactions giving rise to claims in this action occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

9. The City of Branson, Missouri (the "City"), is a city of the fourth class and a political subdivision of the State of Missouri, duly created, organized and existing under and by virtue of the Constitution and laws of the State of Missouri.

10. On August 11, 2006, certain property owners, including Branson Commerce Park, LLC ("Branson Commerce" and/or the "Developer"), filed with the Branson City Clerk a petition for the establishment of a community improvement district, pursuant to the Missouri Community Improvement District Act ("CID Act"), Sections 67.1401 to 67.1571, inclusive, of the Revised Statutes of Missouri. The district was to be known as the Branson Commerce Park Community Improvement District (the "District").

11. The District was authorized and empowered, under the CID Act, to issue bonds for the purpose of carrying out any of its powers, duties or purposes.

12. On September 11, 2006, the Board of Alderman of the City passed an ordinance forming the District, which petition described certain improvements to be funded by the District.

13. On June 27, 2007, the District adopted a resolution (the "Bond Resolution"), authorizing the issuance of the Bonds (pursuant to a trust indenture) for purpose of carrying out any of the District's powers, duties or purposes.

14. On July 1, 2007, the District and the Trustee entered into that certain trust indenture (the "Trust Indenture") related to the financing of the District's powers, duties and purposes.

15. The Trust Indenture defines "Bonds" as "the Series 2007A Bonds and the Series 2007B Bonds."

16.     The Trust Indenture defines the "Series 2007A Bonds" as "the District's Special Assessment Revenue Bonds, Series 2007A in the aggregate principal amount of $13,590,000.00."

17.     The Trust Indenture defines the "Series 2007B Bonds" as "the District's Subordinate Special Assessment Revenue Bonds, Series 2007B in the aggregate principal amount of $3,150,000.00."

18.     The Trust Indenture defines the Trustee as Southwest.

19.     The Trust Indenture defines "Developer" as Branson Commerce Park, LLC.

20.     The Developer owned land where public improvements were to be located while those improvements were being funded by the Bonds.

21.     The Official Statement related to the Trust Indenture (the "Official Statement") describes the "CID Financed Public Infrastructure Improvements" as follows:

> Certain proceeds of the Bonds will be used for stripping, cleaning, erosion control and compacting approximately 400,000 Cubic Yards of land.  Further it will fund the cost of over 20,000 linear feet of sewer line, manholes, and sewer services.  The Developer anticipates approximately 25,000 linear feet of dry utilities to be run throughout the project.  Over 20,000 linear feet of 10-inch water line that will provide water to the entire development will be installed.  Once the utilities are in place the Developer expects approximately 200,000 feet of curbing, paving, back fill and similar improvements.  The project will also include approximately $250,000 of landscaping improvements in rights of way that will include irrigation, retaining walls, hydra-seed and entrance monuments.
>
> Once the on-site improvements are complete the development will have utility access to all sites on the property as well as complete boulevard and collector streets throughout the entire commercial portion of the development and the single-family portion of the residential development.

22.     On July 1, 2007, the District determined that it was in its best interests to issue Special Assessment Revenue Bonds in the aggregate principal amount of $13,590,000.00.

23. In connection with the issuance of the Bonds, the Trust Indenture created and established a Development Period Reserve Fund (the "DPR Fund").

24. Pursuant to the Trust Indenture, the DPR Fund is maintained by the Trustee as a separate and distinct trust fund, and is held, managed, invested, disbursed and administered as provided in the Trust Indenture.

25. The Trustee is also obligated to keep and maintain adequate records pertaining to the DPR Fund.

26. The Trust Indenture provides that "[a]mounts in the Development Period Reserve Fund can only be used by the Trustee to pay Special Assessments on Developer Owned Special Assessment Property to the extent such Special Assessments are not paid when due."

27. The Trust Indenture further provides that "[o]n or before January 5 of each year, commencing January 5, 2009, the District shall ascertain the amount of delinquent Special Assessments on Developer Owned Special Assessment Property, if any, and the amount of related interest and penalties, and shall certify such amount to the Trustee in writing. Upon receipt of such certification the Trustee shall within five days (i) withdraw an amount equal to any delinquent Special Assessments and related interest and penalties and pay such amount to the Collector pursuant to written instructions for payment which shall be supplied to the Trustee by the District at the same time as the certification described in this paragraph, and (ii) inform the Developer in writing of the amount withdrawn from the Development Period Reserve Fund and supply wire transfer instructions for replenishment thereof in accordance with the Replenishment Covenant."

28. The Trust Indenture further provides that "[t]he amount on deposit in the Development Period Reserve Fund will be reduced on and after June 2 of each year if and to the

extent that (a) the Developer provides the Trustee with documents evidencing that the Developer has transferred a portion of the Developer Owned Special Assessment Property to third parties not controlling, controlled by or under common control with the Developer, and (b) the District gives the Trustee written notice that all Special Assessments, penalties and/or interest on said parcel, if any, currently due and payable on such property have been paid through the date of the proposed reduction. Upon satisfaction of such requirements, the Trustee shall release to the Developer a pro-rata amount of the Development Period Reserve Fund. That amount shall be determined by dividing the square footage of the Developer Owned Special Assessment Property transferred by the Developer by the aggregate square footage of Developer Owned Special Assessment Property immediately prior to such transfer and multiplying the resulting ratio by the amount then on deposit in the Development Period Reserve Fund."

29. The Trust Indenture goes on to provide that "[i]n addition, to the extent Special Assessments, penalties and/or interest on all Developer Owned Special Assessment Property has not been paid, upon written notice from the Developer and the District to the Trustee that the Developer has sold the last parcel of Developer Owned Special Assessment Property, the moneys held in the Development Period Reserve Fund, less the amount of such Special Assessments, penalties and/or interest which remains unpaid, shall be released to the Developer on the date of the written notice from Developer . . . ."

30. The Trust Indenture also defines "Replenishment Covenant" as the "Covenant to Replenish Development Period Reserve Fund and Guaranty Thereof," (hereafter the "Guaranty").

31. According to the Trust Indenture, the District "shall enforce the [Replenishment Guaranty] and transfer to the Trustee for deposit to the Revenue Fund all sums received on account of such enforcement actions."

32. The Trust Indenture further provides that the District "will not, without the prior written consent of the Trustee, whose consent shall not be unreasonably withheld or delayed, take any actions to modify, amend or waive any provision of the [Guaranty] in a manner which may materially adversely affect the security of the Bonds or the interest of the owners thereof or adversely affects the exclusion of interest of [ ] on the Bonds from gross income of the Owners thereof for federal income tax purposes."

33. As a precondition to issuing the Bonds and entering into the Indenture, the District and the Developer both executed separate Continuing Disclosure Agreements (the "Disclosure Agreements").

34. On or about July 12, 2007, as a condition of issuing the Bonds pursuant to the Trust Indenture and in connection with the Trust Indenture, the District and the Trustee required that Gloria Garrett and Jane Vandewalle execute and deliver to the District and the Trustee a document titled "Covenant to Replenish Development Period Reserve Fund and Guaranty Thereof" (the "Guaranty").

35. Under the terms of the Guaranty, both Gloria Garrett and Jane Vandewalle are defined as "Guarantor" and "Guarantors;" and the Guaranty provides that it is executed in favor of the District.

36. Pursuant to the Developer's Continuing Disclosure Agreement, the Guarantors agreed to provide the Trustee, no later than October 1 of each year, "copies of an updated financial statement, utilizing either financial statement filed with a financial institution during the

7

then prior twelve month period, or if no such financial statements were filed, updated financial statements in substantially the form of those most recently filed with the Trustee by [the Guarantors]" (an "Updated Financial Statement").

37.     The Guaranty also includes a "Replenishment Obligation," which provides that "[i]n order to induce the District to issue the Bonds and provide funding for the CID Financed Public Infrastructure Improvements to be paid and reimbursed to the Developer for developing and constructing the CID Financed Public Infrastructure Improvements on behalf of the District . . . [Branson Commerce] hereby covenants and agrees, for the benefit of the District and its permitted successors, endorsees and/or assigns, that in the event the [Trustee] is required to withdraw funds from the Development Period Reserve Fund to pay Special Assessments or any related penalties or interest on any or all Developer Owned Special Assessment Property, the Developer will, within twenty (20) days after written notice from the Trustee, replenish the Development Period Reserve Fund in an amount equal to 110% of the withdrawal amount by payment of such amount to the Trustee in immediately available funds (the 'Replenishment Obligation')."

38.     The Guaranty further provides that "[i]n order to induce the District to issue the Bonds and provide funding for the CID Financed Public Infrastructure Improvements to be paid and reimbursed to the Developer for developing and constructing the CID Financed Public Infrastructure Improvements . . . the Guarantors, hereby unconditionally, jointly and severally and irrevocably guarantee to the District and to its permitted successors, endorsees and/or assigns . . . (a) the prompt and complete payment of the Replenishment Obligation as and when due in accordance with the terms hereof; and (b) the payment of any and all reasonable out-of-pocket costs and expenses (including without limitation reasonable attorneys' fees and expenses)

incurred by the District in connection with litigation regarding the enforcement or validity of this Covenant and Guaranty or the Developer's or the Guarantors' obligations hereunder."

39. The District and Trustee claim that the Guaranty is enforceable against Branson Commerce, Gloria Garrett and Jane Vandewalle.

*Violation of the Equal Credit Opportunity Act*

40. The above-referenced Trust Indentures, Bonds and Guaranty are subject to the provisions of the Equal Credit Opportunity Act ("ECOA").

41. Gloria Garrett is not an officer or member of Branson Commerce, and does not hold a legal interest in Branson Commerce.

42. Jane Vandewalle is not an officer or member of Branson Commerce, and does not hold a legal interest in Branson Commerce.

43. The District and the Trustee required Gloria Garrett to sign the Guaranty described above as a condition of issuing the Bonds and providing funding for the CID Financed Public Infrastructure Improvements to be paid and reimbursed to Branson Commerce for developing and constructing the CID Financed Public Infrastructure.

44. The District and the Trustee required Gloria Garrett to sign the Guaranty for the sole reason that she was the spouse of Gordon Garrett, a member of Branson Commerce and another signatory to the Guaranty.

45. The District and the Trustee were required to evaluate the need for the claimed Guaranty signed by Gloria Garrett without discriminating on the basis of marital status. If the claimed Guaranty from Gloria Garrett was not warranted, the District and the Trustee were required to release said Guaranty.

46. Moreover, in compliance with the Disclosure Agreements, and beginning in 2008, Gordon Garrett provided the Trustee with Updated Financial Statements.

47. Each time the District and Trustee received Updated Financial Statements from Gordon Garrett, or reevaluated the creditworthiness of the Developer or the Guarantors, the District and the Trustee were required to evaluate whether the claimed Guaranty from Gloria Garrett was warranted; and if the Guaranty was no longer warranted, to release said Guaranty.

48. The District and the Trustee required Jane Vandewalle to sign the Guaranty described above as a condition of issuing the Bonds and providing funding for the CID Financed Public Infrastructure Improvements to be paid and reimbursed to Branson Commerce for developing and constructing the CID Financed Public Infrastructure.

49. The District and the Trustee required Jane Vandewalle to sign the Guaranty for the sole reason that she was the spouse of John Vandewalle, a member of Branson Commerce and another signatory to the Guaranty.

50. The District and the Trustee were required to evaluate the need for the claimed Guaranty signed by Jane Vandewalle without discriminating on the basis of marital status. If the claimed Guaranty from Jane Vandewalle was not warranted, the District and the Trustee were required to release said Guaranty.

51. Moreover, in compliance with the Disclosure Agreements, and beginning in 2008, John Vandewalle provided the Trustee with Updated Financial Statements.

52. Each time the District and Trustee received Updated Financial Statements from John Vandewalle, or reevaluated the creditworthiness of the Developer or the Guarantors, the District and the Trustee were required to evaluate whether the claimed Guaranty from Jane

10

Vandewalle was warranted; and if the Guaranty was no longer warranted, to release said Guaranty.

53. The claimed Guaranty from Gloria Garrett and Jane Vandewalle was not released as to either Gloria Garrett or Jane Vandewalle.

54. In requiring Ms. Garrett and Ms. Vandewalle to execute the Guaranty, the District and the Trustee discriminated against both Ms. Garrett and Ms. Vandewalle on the basis of marital status. Such acts constituted a violation of the ECOA, 15 U.S.C. § 1691(a) and of Regulation B, 12 C.F.R. §202.7.

55. As a direct and proximate result of the conduct by the District and the Trustee, Gloria Garrett and Jane Vandewalle have suffered actual damages, including, but limited to, monetary losses, injury to credit reputation, and mental anguish, humiliation, or embarrassment.

56. Gloria Garrett and Jane Vandewalle are also entitled to punitive damages pursuant to 15 U.S.C. § 1691e(b).

57. Gloria Garrett and Jane Vandewalle are also entitled to equitable and declaratory relief from the court pursuant to 15 U.S.C. § 1691e(c) in that the District and the Trustee required Gloria Garrett and Jane Vandewalle to incur personal liability on an obligation and debt contrary to provisions of federal law. Thus, Gloria Garrett and Jane Vandewalle have no liability under the claimed Guaranty.

58. Gloria Garrett and Jane Vandewalle are also entitled to recover the costs of this action together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1691e(d).

WHEREFORE, Gloria Garrett and Jane Vandewalle each prays for judgment in her favor and against Southwest Trust Company, N.A. and Branson Commerce Park Community Improvement District for (1) actual damages sustained pursuant to 15 U.S.C. § 1691e(a) and 12

C.F.R. § 202.17(b) in excess of $75,000; (2) punitive damages pursuant to 15 U.S.C. § 1691e(b) and 12 C.F.R. § 202.17(b); (3) an order from this court in favor of Gloria Garrett and Jane Vandewalle and against the District and the Trustee declaring as void the purported Guaranty, and declaring that Gloria Garrett and Jane Vandewalle are not liable on the purported Guaranty pursuant to 15 U.S.C. § 1691e(c) and 12 C.F.R. § 202.17 (b); (4) Gloria Garrett's and Jane Vandewalle's costs and reasonable attorneys' fees incurred pursuant to 15 U.S.C. § 1691e(d) and 12 C.F.R. § 202.17(b); and (5) for such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Gloria Garrett and Jane Vandewalle hereby further demand a jury trial on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Gloria Garrett and Jane Vandewalle hereby designate Kansas City, Kansas as the place of trial in this case.

Respectfully submitted,

DUGGAN, SHADWICK, DOERR
& KURLBAUM, LLC


By      /s/ Thomas J. Hamilton
        John M. Duggan, #14053
        Thomas J. Hamilton, #24139
        11040 Oakmont
        Overland Park, Kansas 66210
        jduggan@kc-dsdlaw.com
        thamilton@kc-dsdlaw.com
        (913) 498-3536
        Fax (913) 498-3538