## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GLORIA GARRETT, et al.,       )
                                      )
            **Plaintiffs,**       )
                                      )
**v.**                               )
                                      )    **Case No. 13-CV-2551-JAR-JPO**
**BRANSON COMMERCE PARK**   )
**COMMUNITY IMPROVEMENT**   )
**DISTRICT, et al.,**          )
                                      )
            **Defendants.**    )
_____)

## MEMORANDUM AND ORDER

Plaintiffs Gloria Garrett and Jane Vandewalle bring this action against Defendants Branson Commerce Park Community Improvement District (the "District") and BOKF, N.A. ("BOFK"), as a successor by merger to Southwest Trust Company, N.A. ("Southwest Trust"), alleging claims under the Equal Credit Opportunity Act (the "ECOA"). Plaintiffs request monetary and punitive damages, as well as a declaratory judgment that the spousal guaranties at issue are void.

Before the Court are the following motions: Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 36); Defendant BOKF's Motion for Judgment on the Pleadings (Doc. 21); Defendant the District's Motion to Dismiss (Doc. 16); Defendant BOFK's Motion for Leave to File Sur-Reply Addressing Plaintiffs' Motion for Leave to Amend Complaint (Doc. 48), and Defendant the District's Motion for Leave to File Sur-Reply to Plaintiffs' Reply in Support of Motion for Leave to File Amended Complaint (Doc. 49). The motions are fully briefed and the Court is in receipt of BOFK's Notice of Supplemental Authority (Doc. 52).

Defendants argue that they do not qualify as "creditors" with respect to a "credit"

transaction under the ECOA, that Plaintiffs' claim is barred by the statute of limitations, that Plaintiffs lack standing because they are not "applicants" under the ECOA, and that the ECOA does not permit courts to void personal guaranties.  Plaintiffs responded to Defendants' dispositive motions, arguing that the original Complaint should not be dismissed under any of the grounds raised by Defendants.  However, they later moved for leave to amend their complaint to address the deficiencies raised in the dispositive motions, attaching a proposed First Amended Complaint.  Therefore, the Court must first consider whether Plaintiffs should be allowed leave to amend, rendering the dispositive motions moot.  For the reasons discussed more fully below, the Court denies Plaintiffs' motion for leave to amend as futile and grants Defendants' motion to dismiss and motion for judgment on the pleadings.

## I.     Legal Standards

Under Rule 15(a), leave to amend a complaint is freely given when justice so requires.[1] A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment."[2]   Defendants argue that leave to amend should be denied because the proposed amendment was made in bad faith, and because it is futile.

A proposed amendment is futile if the amended complaint would be subject to dismissal.[3] To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true,

---

[1]Fed. R. Civ. P. 15(a)(2).

[2]*Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

[3]*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008).

2

that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[4]   Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[5]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[6] but requires more than "a sheer possibility."[7]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*[8] seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[9]  *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[10]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all of the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[11]

---

[4]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  The standard for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that applied to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

[5]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[6]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7]*Id.*

[8]550 U.S. 544 (2007).

[9]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[10]*Id.* (citing *Twombly*, 550 U.S. at 556).

[11]*Iqbal*, 556 U.S. 662, 678.

Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[12]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[13]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]

If the Court on a Rule 12(b)(6) motion looks to matters outside the complaint, it generally must convert the motion to a Rule 56 motion for summary judgment.[15]  However, the court may consider documents which are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[16]  Here, Plaintiffs submitted copies of the Trust Indenture and Guaranty at issue in responding to the dispositive motions, as well as Branson Commerce's Disclosure Agreement.[17]  Because these documents are central to Plaintiffs' claims, the Court considers them in deciding futility of the proposed amendment, and dismissal of the original Complaint.

## II.    Facts as Alleged in the Proposed First Amended Complaint

The following facts are alleged in the First Amended Complaint or contained in the

---

[12]*Id.* at 678–79.

[13]*Id.* at 678.

[14]*Id.*

[15]Fed. R. Civ. P. 12(d).

[16]*See Alvardo v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation omitted); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[17]*See* Docs. 26, Exs. A, C, D; Doc. 27, Exs. A, C, D.

4

documents attached to Plaintiffs' responses to the dispositive motions.  The Court views all facts in the light most favorable to Plaintiffs.

The City of Branson, Missouri formed the District by ordinance, describing certain municipal improvements to be funded by the District.  The District then adopted a resolution authorizing the issuance of bonds for the purpose of carrying out any of the District's powers, duties, or purposes.  The District and Southwest Trust, as Trustee, entered into a Trust Indenture on July 1, 2007, which provided for the financing of municipal bonds.  Southwest Trust is a predecessor in interest to BOKF.  The Trust Indenture requires that the Trustee be "a trust institution" or "commercial bank" that is "subject to examination by a federal or state bank regulatory authority."  The District issued the municipal bonds to fund certain public improvements on property owned and developed by Branson Commerce Park, LLC ("Branson Commerce").

The Trust Indenture designates a portion of the bond proceeds to fund the Development Period Reserve Fun ("Reserve Fund") to pay special assessments on the property in the event that such assessments are not paid when due.  The Trustee is to maintain the Reserve Fund in a separate account.  The Trust Indenture requires the Trustee to keep and maintain adequate records pertaining to the Reserve Fund, and provides that on or before January 5 of each year, "the District shall ascertain the amount of delinquent Special Assessments on Developer Owned Special Assessment Property, if any, and the amount of related interest and penalties, and shall certify such amount to the Trustee in writing."  Within five days of receipt of this certification, the Trustee is to withdraw and pay the amount to the collector, and inform Branson Commerce in writing of the amount withdrawn and supply wire transfer instructions for it to replenish the

fund.  The Trust Indenture provides that the amount on deposit in the Reserve Fund may be reduced on and after June 2 each year under certain circumstances, and that the Trustee as a result, may release a pro-rata amount of the Reserve Fund.  The amount would be reduced to the extent that Branson Commerce submits proof to the Trustee that it has transferred a portion of the property to third parties not controlled by Branson Commerce, and the District provides the Trustee with written notice that all special assessments and any penalties and interest on the property have been paid.  The money in the fund will be released to Branson Commerce, less any special assessments, penalties, or interest due, on written notice from Branson Commerce and the District that Branson Commerce has sold the last parcel of the property.

The Trust Indenture provides for execution of a Covenant to Replenish Development Period Reserve Fund and Guaranty Thereof ("Guaranty").  In order to induce the District to issue the bonds, Branson Commerce, its members and its members' spouses were required to execute a Guaranty in favor of the District.  The Guaranty obligated them to replenish the Reserve Fund "within twenty (20) days" of receiving written notice from the Trustee."[18]  Each of the Guarantors are unconditionally, jointly, and severally liable for replenishment of the Reserve Fund.  Plaintiffs Garret and Vandewalle are not officers or members of Branson Commerce and hold no legal interest in Branson Commerce.  They signed the Guaranty as spouses of Branson Commerce members.

At the same time that the Guaranty and Trust Indenture were executed, Branson Commerce and the Guarantors executed the Developer's Continuing Disclosure Agreement ("Disclosure Agreement").  It requires Branson Commerce to provide quarterly financial reports

---

[18]Doc. 27, Ex. 3 at ¶ 27-3.

to the District and the Trustee.  The District and the Trustee annually reviewed these reports to determine the creditworthiness of Branson Commerce.  The Disclosure Agreement requires that the Guarantors annually provide updated financial statements to the District and the Trustee. The Trustee and the District failed to reevaluate the need for the spousal Guaranties on an annual basis to determine if they continued to be warranted.

## III.    Discussion

Defendants argue that Plaintiffs' motion for leave to amend should be denied as futile, for largely the same reasons for which they moved for dismissal and judgment on the pleadings with respect to the original Complaint.  Defendants further argue that the motion for leave to amend should be denied because the proposed amendments reflect bad faith.  Defendants complain that Plaintiffs waited until after filing lengthy responses to the dispositive motions before seeking leave to amend, requiring Defendants to prepare unnecessary reply briefs in the event the proposed amendments cured the issues raised in those dispositive motions.  While the Court does find this delay prolonged disposition of the legal issues in this case, most of the increased work due to the delay appears to have fallen on Plaintiffs, rather than Defendants.  Defendants' reply deadline was stayed by Judge O'Hara pending a ruling on the motion for leave to amend;[19] only after this Court reviewed the briefs on the pending motions did it lift the stay on those replies.[20] No deadline had been set by the Court for filing motions for leave to amend at the time Plaintiffs filed their motion.  Under these circumstances, the Court finds no evidence of bad faith.  The Court proceeds instead to determine whether leave to amend should be denied as futile.

---

[19]Doc. 34.

[20]Doc. 57.

A.      **Applicability of the ECOA**

The ECOA provides that "it shall be unlawful for any creditor to discriminate against any applicant, with respect to any credit transaction . . . on the basis of . . . marital status."[21]  "The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit."[22] Defendants argue that the ECOA does not apply to the guaranties in this case because Plaintiffs are not "applicants" and Defendants are not "creditors" involved in a "credit transaction." Plaintiffs argue that the proposed amendments set forth additional facts as to Defendants' conduct with respect to the Reserve Fund that are sufficient to establish they are creditors under the ECOA.  Defendants argue that under no set of facts can Plaintiffs show that Defendants were "creditors" under the ECOA, for the reasons argued in their dispositive motions.  The Court assumes without deciding that Plaintiffs are applicants under the ECOA and proceeds to consider whether Defendants are creditors.  The Court agrees that based on the factual allegations in Plaintiff's proposed First Amended Complaint, Defendants are not creditors acting with respect to a credit transaction under the ECOA, and thus, the proposed amendment would be futile.

1.      **Creditor**

The ECOA defines a creditor as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue

---

[21]15 U.S.C. § 1691(a)(1).

[22]*Brothers v. First Leasing*, 724 F.2d 789, 793–94 (9th Cir. 1984) (quotations and citations omitted).

credit."[23]  As an initial matter, the facts as alleged in the proposed First Amended Complaint establish that BOKF did not issue or arrange for the purported credit here.  Neither BOKF nor Southwest were parties to the Guaranty; they were designated as Trustees under the Trust Indenture.  Holding the funds governed by the Trust did not create a debt entitling them to payment from Plaintiffs or Branson Commerce.[24]  BOKF was limited to holding funds contemplated by the Trust Indenture and providing written notice that replenishment of the Reserve Fund was due from Plaintiffs within twenty days, if special assessments were unpaid when due.

Moreover, the Court agrees with Defendant that the First Amended Complaint lacks factual allegations sufficient to establish that BOKF and the District regularly extend or arrange for the extension of credit, as required by the statute.  The District is an entity created by city ordinance for the sole purpose of funding municipal improvements.  The District authorized the issuance of bonds for that purpose.  The Trust Indenture specifically provides that "[t]he Bonds do not constitute an indebtedness within the meaning of any constitutional, statutory or charter debt limitation or restriction."[25]  There is also no indication that the District regularly issues or extends "credit," as described in detail in the next section.

Likewise, BOKF is not a creditor under the Act.  The parties agree that Southwest Trust, its predecessor in interest, was the original Trustee under the Trust Indenture.  The two entities merged sometime after the Trust Indenture and Guaranty were executed.  Therefore, under the

---

[23]*Id.* § 1691a.

[24]*See, e.g., Mendaros v. JPMorgan Chase Bank, N.A.*, No. 14-CV-01260-JST, 2014 WL 3373447 (N.D. Cal. July 9, 2014) (holding that a trustee in a credit action is not subject to the ECOA).

[25]Doc. 15, Ex. 1 § 202(a).

plain language of the statute, BOKF could only be a "creditor" as an assignee of Southwest Trust if Southwest Trust qualifies as a creditor by regularly extending or arranging for the extension of credit.  Plaintiffs maintain that the Trustee was required under the Trust Indenture to be a trust institution or commercial bank subject to examination by a federal or state banking authority. But even assuming as true the unpleaded allegation that Southwest Trust is a trust institution or commercial bank, this is insufficient to establish that Southwest Trust in fact regularly extended credit; there are no factual allegations in support of this contention in the proposed pleading. Moreover, the fact that it is named as a trustee, and that it can enforce certain provisions in the Trust Indenture and Guaranty does not render Southwest Trust a creditor.  Plaintiffs fail to explain how these activities qualify as arranging credit.  As already described, the Court finds that administering a fund in the capacity of Trustee does not amount to conduct involving a credit transaction.

### 2.    Credit

The statute defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor."[26]  As the Fourth Circuit has explained, "[t]he hallmark of 'credit' under the ECOA is the right of one party to make deferred payment.  The courts have consistently so held."[27]  Plaintiffs do not contend that the bonds constituted an extension of credit to Branson Commerce.  Instead, Plaintiffs contend that Defendants extended credit to Plaintiffs through the Reserve Fund.  But taking the factual allegations set forth in the proposed amended pleading as

---

[26]*Id*. § 1691a(d); *see also* 12 C.F.R. § 202.2.

[27]*Riethman v. Berry*, 287 F.3d 274, 277 (4th Cir. 2002).

true, and reading it in conjunction with the documents submitted by Plaintiffs, the Reserve Fund does not function like credit issued for the benefit of Branson Commerce.

Plaintiffs allege that Defendants extended credit by funding the Reserve Fund with bond proceeds.  But neither the Guaranty nor the Trust Indenture provide that the funds allocated to the Reserve Fund created a debt entitling the Trustee or the District to payment from Plaintiffs. Plaintiffs were required to replenish the Reserve Fund for the sole purpose of paying special assessments, penalties, and interest, in the event that the Reserve Fund was insufficient.  Under the terms of the Trust Indenture, it is possible that no money would ever be necessary to replenish the fund, assuming that Branson Commerce paid the special assessments when due. Simply put, Defendants were not entitled to any payment under the Guaranty because Plaintiffs did not incur debt from them.  Plaintiffs' replenishment obligation, if triggered, solely existed to pay special assessments.

Plaintiffs argue that the Guaranty functions in the same way as a typical bank loan to a borrower.  The Court disagrees.  Even if the Guaranty created debt that Plaintiffs owed to Defendants, such debt did not grant Plaintiffs a right to deferred payment.  Although not dispositive, the Guaranty, unlike typical debt agreements, did not contemplate interest or an installment payment schedule in the event that Plaintiffs did not pay their obligation in full twenty days after receiving notice.  While Plaintiffs were required to fulfill their obligation "within" twenty days after receiving notice, the Guaranty did not confer a right to defer such payment.[28]  Providing time to make a payment does not necessarily constitute a *right* to defer

---

[28]*See Capitol Indem. Corp. v. Akulah*, 313 F.3d 200, 203–04 (4th Cir. 2002) (holding that ECOA does not apply to indemnity agreement and underlying surety bonds because no right to defer payment existed); *Ulico Cas. Co. v. Superior Mgmt. Servs., Inc.*, 89 F. App'x 278, 279 (D.C. Cir. 2004) (holding that indemnity agreement and underlying surety bonds are not "credit transactions" under the ECOA because there was no right to defer payment).

payment.[29]  Use of the term "within" indicates that the Plaintiffs were encouraged to pay prior to the twenty-day deadline.  The Guaranty also provided an acceleration clause that Plaintiffs must make "prompt and complete payment of the Replenishment Obligation as and when due."[30]  Plaintiffs did not have a right to deferred payment but were given twenty days to fulfill their replenishment obligation in its entirety.

Plaintiffs rely on paragraph 29 of the First Amended Complaint: "The Reserve Fund functions as a credit, issued by the Trustee and the District, to pay for expenses related to the Property."  The Court disregards this paragraph, as it constitutes a legal conclusion.  Plaintiffs also point the Court to its allegation that the Trustee is required to evaluate the creditworthiness of Branson Commerce each time it decides to renew the Reserve Fund.  The Court does not find that this fact is sufficient to render the Reserve Fund a credit arrangement; it does not evidence an agreement to defer payment.[31]  Moreover, the Court agrees with Defendants that neither the original Complaint nor the proposed First Amended Complaint alleges facts that show the Trustee ever "renewed" the Reserve Fund—Plaintiffs' citations to the Trust Indenture do not support this characterization.  The Trust Indenture provides that the fund exists, as Defendants say, perpetually, until Branson Commerce and the District certify that the last parcel of land is sold.  Each year, the Trustee is to evaluate the Reserve Fund and determine whether to remit funds to Branson Commerce in the event that certain parcels of the property are sold to third

---

[29]*See, e.g., Butler v. Capitol Fed. Sav.,* 904 F. Supp. 1230, 1234 (D. Kan 1995); *Dunn v. Am. Express Co.,* 529 F. Supp. 633, 634 (D. Colo. 1982).

[30]Doc. 27, Ex.3 at ¶ 2(a).

[31]*See Universal Bonding Ins. Co. v. Esko & Young, Inc.,* No. 90C02995, 1991 WL 30049, at *3 (N.D. Ill. Feb. 28, 1991) (finding suretyship promise does not involve a credit transaction and that "the mere fact that an analysis of credit may be one of the considerations in the underwriting process does not render the entry into contracts for construction bonding 'credit transactions' as defined in the Act.").

parties.  The Court finds that these allegations are legal conclusions that are not entitled to an assumption of truth.  Even liberally construing the Reserve Fund provision as a "renewal" provision, there are no factual allegations that Defendants ever issued a written notice to Branson Commerce or Plaintiffs that they were required to replenish the Reserve Fund, that monies from the Reserve Fund were ever remitted to Branson Commerce, or that the Trustee actually "renewed" the Reserve Fund.

Plaintiffs argue that because there is a risk of default, the Fund Reserve arrangement is akin to phone and utility payment plans, which courts have found constitute "credit" under the Act since the obligation to replenish arises after the funds are depleted.  But the fact that there is a risk of default does not, standing alone, render this a credit transaction.  Under the terms of the Trust Indenture, if Branson Commerce defaults on its replenishment obligations, it is responsible for paying that debt, which is accelerated.  Plaintiffs would then become liable to the District under the guaranties for the full amount of default.  There is no right to defer payment under this arrangement.[32]

Moreover, the Court does not find that the guaranties here are analogous to the service provider arrangements discussed in the cases relied on by Plaintiffs.  Courts have found these arrangements constitute credit under the portion of the "credit" definition that applies to "the right to purchase property or services and defer payment therefor," which does not require debt as a necessary element.[33]  In those cases, the consumers' applications to purchase cellular

---

[32]*See, e.g.*, *Ulico Cas. Co.*, 89 F. App'x at 279.

[33]12 C.F.R. § 202.2; *see, e.g.*, *Williams v. AT&T Wireless Servs., Inc.*, 5 F. Supp. 2d 1142, 1145 (W.D. Wash. 1998); *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1211–12 (6th Cir. 1997); *Gunter v. Long Island Power Auth./Keyspan*, No. 08CV 498, 2012 WL 4057410, at *10 (E.D.N.Y. Aug. 8, 2012).

telephone service or public utility service involves the purchase of services and a deferral of payment for those services.  Here, there is no right to purchase services, nor a right to defer payment for services.  The guaranties are instead obligations to replenish a Reserve Fund that is otherwise funded by bond proceeds.  The replenishment obligation is triggered only in the event that the fund is depleted in order to pay for delinquent special assessments and Branson Commerce fails to otherwise replenish the fund.  The Court does not find that this arrangement constitutes a right to purchase services and defer payment for those services.

Plaintiffs allege in their reply that when alleging statutory violations in a pleading, their allegations are sufficient to state a claim when they merely allege that they are "parties entitled to relief under the statute."  Plaintiff misunderstand their obligations under *Twombly* and *Iqbal*, and misread Judge Murguia's decision in *Wenner v. Bank of America*.[34]  That case involved a Fair Credit Reporting Act claim and the defendant moved to dismiss on the basis that the plaintiffs did not specifically allege that the defendant was a "furnisher" of information, a prerequisite to liability.  Judge Murguia explained that while the plaintiffs did not specifically allege that the defendant was a "furnisher" under the FCRA, they did allege sufficient facts to support that defendant was a furnisher as defined by the statute, because they alleged that defendant "and/or its credit card division transmitted information concerning plaintiffs' alleged debt to CRAs."[35]  *Wenner* does not stand for the proposition that it is sufficient to allege that Plaintiffs are entitled to relief under the statute in order to survive scrutiny under *Twombly* and *Iqbal*.  Instead, Judge Murguia found that the plaintiffs had alleged sufficient <u>facts</u>, taking all

---

[34] 637 F. Supp. 2d 944 (D. Kan. 2009).

[35] *Id.* at 951.

reasonable inferences in favor of the plaintiffs, to adequately allege that defendants are furnishers under the FCRA.[36]  Here, Defendants do not simply allege that the proposed First Amended Complaint lacks a specific allegation that Defendants are creditors under the Act—they argue that the facts, when taken as true, and the attached documents, are insufficient to establish that they are creditors under the Act as a matter of law.  This Court has taken the facts alleged in the proposed First Amended Complaint as true and drawn all reasonable inferences in favor of the Plaintiff.  Neither the underlying documents nor the factual allegations in the proposed pleading support Plaintiffs' legal conclusion that Defendants are "creditors" under the Act.

Under no set of facts would Plaintiffs' proposed amendments cure the deficiency in the original Complaint that Defendants are not creditors subject to the ECOA.  Accordingly, Plaintiffs' claims would still be subject to dismissal under Rule 12(b)(6) and Rule 12(c) if the opportunity to amend was granted.  The Court therefore denies as futile Plaintiffs' motion for leave to amend.  The Court further finds that Defendants' motion to dismiss and motion for judgment on the pleadings must be granted as to the original Complaint.

### B.    Statute of Limitations

Assuming, *arguendo*, that the ECOA applied to Plaintiffs' claims in this case, the Court would grant Defendants' motions on the alternate ground that the statute of limitations bars Plaintiffs' claims.  The parties dispute whether a five-year or two-year statute of limitations applies in this case.[37]  The Court need not resolve this issue, however, because Plaintiffs argue

---

[36]*Id.*

[37]In 2010, 15 U.S.C. § 1691e(f) was amended to provide for a five-year statute of limitations.  Prior to the statute's amendment, the statute of limitations was two years under 12 C.F.R. § 202.17(b)(2).

that the Trustee and the District were required to renew and continue the Reserve Fund and the replenishment covenant on an annual basis, and that each time the Reserve Fund was renewed, a new ECOA violation occurred.  Because the Court rejects this argument, Plaintiffs claims are time-barred even under a five-year statute of limitations.

Plaintiffs' argument hinges on their contention that the spousal guaranties in this case were renewed each year, a requirement that is mandated by the Federal Reserve Board's interpretation of the regulations.  This interpretation states that "[i]f the borrower's creditworthiness is reevaluated when a credit obligation is renewed, the creditor must determine whether an additional party is still warranted and, if not warranted, release the additional party."[38]

Plaintiffs however conflate the requirements set forth by this authority.  Plaintiffs suggest that this commentary requires renewal whenever an applicant's creditworthiness is reevaluated.  But that is not what the commentary states.  The commentary requires a review of creditworthiness when a credit obligation is renewed, and in that circumstance, a review of whether the additional party's guaranty is still warranted.  Plaintiffs advance a circular argument—because the Trustee was required to review the guarantors' financial statements on a regular basis and review the status of the Reserve Fund, then there must have been a renewal.  But there are no factual allegations that either the Guaranty or the Trust was renewed, and the Trust Indenture does not support Plaintiffs' allegation that it required the Trustee to "renew" the Reserve Fund each year.  As already explained, the original Trust Indenture provided that the Trustee could remit funds to Branson Commerce from the Reserve Fund under certain circumstances on an annual basis,

---

[38] 12 C.F.R. § 202.2, Supp. I, ¶ 7(d)(5) cmt. 3

16

however, the existence of the Reserve Fund had no end date or renewal requirement.  Unlike in the cases cites by Plaintiffs, there is no allegation that a new credit obligation was executed in this case.[39]  The Guaranty submitted by Plaintiffs were signed in July 2007, more than five years before this case was filed in 2013.  The parties did not sign renewal documents and the Court finds that any quarterly or annual creditworthiness evaluation was done as part of the original obligation set forth in the 2007 agreements; such conduct did not create a new act of discrimination.  For these reasons, the Court would find that the proposed First Amended Complaint is futile because it is untimely, even if Plaintiffs' claims otherwise fell within the scope of the ECOA.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 36) is **DENIED**.

**IT IS FURTHER ORDERED BY THE COURT** that BOFK's Motion for Leave to File Sur-Reply Addressing Plaintiffs' Motion for Leave to Amend Complaint (Doc. 48) and the District's Motion for Leave to File Sur-Reply to Plaintiffs' Reply in Support of Motion for Leave to File Amended Complaint (Doc. 49) are **DENIED** as moot.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant BOFK's Motion for Judgment on the Pleadings (Doc. 21); Defendant the District's Motion to Dismiss (Doc. 16) are **GRANTED**.  This case is dismissed in its entirety with prejudice.

---

[39]*Stern v. Espirito Santo Bank of Fla.*, 791 F. Supp. 865, 869 (S.D. Fla. 1992) (discussing renewals in the context of an applicant who executed a renewal and replacement mortgage note; holding that the bank had an affirmative duty to consider whether the guaranty was still necessary at the time the mortgage note was renewed); *see also Bank of Am., N.A. v. GREC Homes IX, LLC*, No.  at *15 (S.D. Fla. Jan. 23, 2014) (applying *Stern* in the context of a loan extension); *Silverman v. Eastrich Multiple Investor Fund, L.P.*, 857 F. Supp. 447, 454–55 (E.D. Pa. 1994), *rev'd on other grounds*, 51 F.3d 28 (3d Cir. 1995) (declining to find that approval of a bankruptcy organization plan constitutes a "renewal" of the plaintiff's obligations under a guaranty signed outside the limitations period).

Dated: September 29, 2014

                                      S/ Julie A. Robinson

                                      JULIE A. ROBINSON

                                      UNITED STATES DISTRICT JUDGE